Merrily C. COBURN, Plaintiff,

v.

Roger A. NORDEEN, Defendant.

No. 01–2562–JAR.

United States District Court, D. Kansas.

June 6, 2002.

**1120**

Merrily C. Coburn, Goddard, KS, Pro se.

M. J. Willoughby, Office of Attorney General, Topeka, KS, for Defendant.

### MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

ROBINSON, District Judge.

This matter comes before the Court on Defendant Roger A. Nordeen's Motion to Dismiss (Doc. 7) Plaintiff's Complaint. In her Complaint, Plaintiff alleges that Nordeen violated 42 U.S.C. § 1983, when he

> [A]cting under the color of law, did then and there knowingly or recklessly swear to a false and deceptive complaint and supporting affidavit of probable cause, and did thereby directly and proximately cause the false and unlawful arrest, seizure, and detention of Merrily Coburn . . . .

The asserted bases for the motion to dismiss are: (1) that the Complaint is barred by Eleventh Amendment, prosecutorial and qualified immunity;[1] and (2) that the Complaint fails to state a claim under 42 U.S.C. § 1983. Because the Court finds that Nordeen's actions in filing a sworn criminal complaint and affidavit against Plaintiff were objectively reasonable, the Court concludes that Nordeen is protected by qualified immunity.

### Background

Plaintiff's son has been charged in a juvenile action with possession of marijuana with intent to sell. Debbie and Tim Conely's juvenile son has been endorsed as a witness in that case. The court entered a "no contact order" mandating that Plaintiff's son not contact, among others, the Conely's son, either directly or indirectly (via phone, mail, letters, and or third par-

---

1. Plaintiff brings this suit against Nordeen in his individual capacity, not in his official capacity as an Assistant District Attorney. Although there is language in her complaint by which one could infer this is a suit against Nordeen in his individual capacity, Plaintiff clarified this in her response to Defendant's motion to dismiss. Accordingly, the Court need not address Defendant's argument that Plaintiff's suit against him in his official capacity is barred by the Eleventh Amendment. The Eleventh Amendment bars suits filed in federal court for damages against states and state officials. *See generally, Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Eleventh Amendment immunity applies to actions under 42 U.S.C. § 1983. *Klein v. University of Kansas Medical Center,* 975 F.Supp. 1408, 1415 (D.Kan.1997). Suits against state officials in their official capacity are generally barred, as tantamount to suits directly against the state, because in either instance, when plaintiff seeks monetary damages they would be paid out of the state's treasury. *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

ties). At some point, a contempt motion was filed in state district court against Robert Coburn, Plaintiff's husband, for alleged intimidation of a witness after he attempted to contact the Conely's son.

On or about April 22, 2001, the Coburns made a police report about a truck that had almost hit their daughter. Merrily Coburn told the officers that her daughter recognized the driver, a juvenile male, who she identified to police. When police interviewed this juvenile male, he denied any knowledge of the truck and the near collision with the Coburn girl. Apparently unsatisfied with the police investigation, Merrily Coburn alleges that on May 6, she was taking her daughter to look for the suspect truck. She admits that she did "incidentally" drive past the Conelys' residence.

On May 6, 2001, Debbie Conely made a police report to the Johnson County Sheriff's Department. The report states that Debbie Conely was driving home when she noticed a green GMC "Jimmy" truck, which she believed was occupied by the Coburns, and that they were following her to find out where she lived. During that same time frame, Tim Conely noticed a green GMC truck pass the Conelys' house at least twice. He said he realized it was the Coburns' after he noticed the truck sitting at the stop sign across the street for an abnormally long time. He believed this was the same vehicle he had earlier seen pass by his house. As Debbie Conely pulled into her driveway, Merrily and Robert Coburn allegedly stopped in front of the Conelys' house. Debbie Conely alleges that she saw Robert Coburn grin at her, implying to her that he now knew where she lived.

The Conelys promptly called the police. A Johnson County sheriff's deputy responded and completed an offense report and memorandum,[2] which related the substance of his interviews with Debbie and Tim Conely about the incident. Among the details provided by Debbie Conely, were that the Coburns were driving a green GMC "Jimmy" truck, with a Kansas license tag bearing letters QAI.

The deputy's report further relates the substance of his interviews of Robert and Merrily Coburn. Robert Coburn denied being present during the incident. Merrily Coburn stated that she and her daughter and son, but not her husband, were in the area at the time, looking for a truck which she believed had almost struck her daughter on an earlier occasion. Merrily Coburn admitted driving by the Conely house by accident. She further admitted that she owned a green GMC "Jimmy" truck with a Kansas license tag bearing letters QAI.

On May 14, 2001, Roger A. Nordeen, Assistant District Attorney, filed a criminal complaint[3] against Merrily C. Coburn, which stated in pertinent part:

I, Roger A. Nordeen, Assistant District Attorney of said County, being duly sworn on oath state to the Court that

MERRILY C. COBURN

did the following:

Count I—That on or about the 6th day of May 2001, in the County of Johnson, State of Kansas, Merrily C. Coburn did then and there unlawfully, willfully, maliciously and feloniously attempt to prevent or attempt to dissuade a witness . . . who was under 18 years of age, from a[sic] causing a complaint, indictment or information to be sought and prosecuted

---

**2.** Attached to Plaintiff's Complaint in this case.

**3.** Attached to Plaintiff's Complaint in the instant action.

and assisting its prosecution or from a[sic] causing a civil action to be filed and prosecuted and assisting its prosecution, a severity level 6 person felony, in violation of K.S.A. 21–3833, K.S.A. 21–4704 and K.S.A. 21–4707.

Nordeen also filed a sworn affidavit, in which he recounted information from the reports of the Johnson County Sheriff's Department. In this affidavit,[4] Nordeen provided additional information, that the Conelys' son had been endorsed as a witness in a juvenile case in which the Coburns' son had been charged with possession of marijuana with intent to sell.

In this action, Plaintiff contends that Nordeen "did then and there knowingly or recklessly swear to a false and deceptive complaint and supporting affidavit of probable cause." Plaintiff alleges that Nordeen falsely stated that: (1) Merrily Coburn was in Edgerton Kans. on May 6th, 2001, by her own admission and/or by the admission of anyone else, looking for a vehicle driven by the Conelys' son;[5] and (2) Merrily Coburn followed Debbie Conely to find out where she lived. Plaintiff further alleges that Nordeen omitted exculpatory information, in failing to state that Conely's son was not home or in Edgerton, Kansas, at the time of the incident on May 6. Plaintiff alleges that these false statements and omission deceived a magistrate into finding probable cause to issue an arrest warrant. On May 14, 2001, Plaintiff was arrested on the warrant.

## Motion to Dismiss

Dismissal for failure to state a claim upon which relief can be granted is appropriate ."only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."[6] A Rule 12(b)(6) motion allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true.[7] The Court accepts as true the well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff.[8]

## Discussion

█ In his individual capacity, Nordeen is a person who can be sued under 42 U.S.C. § 1983 for his actions under color of law.[9] But, if his action under color of law is "prosecutorial action," he is protected by absolute prosecutorial immunity.[10] So long as the prosecutor is performing functions "associated with the judicial phase of the criminal process,"[11] he or she is protected from suits for civil damages. To ensure "... the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system,"[12] this absolute immunity covers such actions as initiating,

---

4. Attached to Defendant's Memorandum in Support of Motion to Dismiss.

5. This Court declines to identify the Coburns' son or the Conelys' son by name, as both are juveniles.

6. *Van Deelen v. City of Eudora, Kansas,* 53 F.Supp.2d 1223, 1226 (D.Kan.1999) (citations omitted).

7. *Id.* (citations omitted).

8. *Id.* (citation omitted).

9. *See generally, Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

10. *Imbler v. Pachtman,* 424 U.S. 409, 427, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Atkins v. Lanning,* 556 F.2d 485, 488 (10th Cir.1977).

11. *Dees v. Vendel,* 856 F.Supp. 1531, 1536–37 (D.Kan.1994) (citation omitted).

12. *Imbler,* 424 U.S. at 427–28, 96 S.Ct. 984.

building or prosecuting a criminal case.[13] This immunity extends to civil rights litigation brought under 42 U.S.C. § 1983;[14] and this immunity applies even when there is evidence of improper motivation or malice.[15]

■ The initiation of criminal charges is generally considered a prosecutorial function, so closely aligned with the judicial process as to accord the prosecutor absolute immunity. But investigative acts performed by a prosecutor are accorded only qualified immunity. In *Burns v. Reed*,[16] the Supreme Court distinguished the prosecutor's misleading presentation of evidence at the probable cause hearing (absolute immunity) from the prosecutor's providing legal advice to the police (qualified immunity). The key to absolute immunity, as the Court had noted in *Buckley v. Fitzsimmons*,[17] is whether the challenged action is linked to the judicial process; and further, whether at common law, such action was accorded immunity.

■ Using this analysis, in *Kalina v. Fletcher*,[18] the Supreme Court drew a bright line between sworn and unsworn pleadings filed by a prosecutor. The Court held that the prosecutor had absolute immunity for filing an unsworn information and motion for arrest warrant; but the prosecutor had only qualified immunity for filing and personally vouching for the

truthfulness of facts in a certificate for determination of probable cause. Common law had not protected prosecutors from this type of action; traditionally law enforcement officers serve as affiants or attest to the truthfulness of statements made in support of probable cause.

■ Thus, Nordeen's conduct, in filing a sworn complaint and sworn affidavit stating the facts purporting to establish probable cause, is entitled to qualified, not absolute immunity. A prosecutor's qualified immunity from Section 1983 claims that he filed a false affidavit or vouched for false statements in a criminal complaint, is examined using an objective reasonableness standard. In *Malley v. Briggs*, the Supreme Court articulated this standard as "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable ... [citation omitted] ... will the shield of immunity be lost."[19] Where officers of reasonable competence could disagree on the existence of probable cause and whether a warrant should issue, the actor is entitled to qualified immunity.[20]

In the context of a Rule 12(b)(6) motion to dismiss, "the qualified immunity defense is limited to the pleadings," and "the allegations in the complaint and any reasonable inferences ... from them" are drawn in plaintiff's favor.[21] In this context, the

---

**13.** *Buckley v. Fitzsimmons*, 509 U.S. 259, 269–70, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *Dohaish v. Tooley*, 670 F.2d 934, 938 (10th Cir.1982), *cert. denied*, 459 U.S.. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982).

**14.** *Van Deelen v. City of Eudora, Kansas*, 53 F.Supp.2d 1223, 1227–32 (D.Kan.1999).

**15.** *Lerwill v. Joslin*, 712 F.2d 435, 441 (10th Cir.1983).

**16.** 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991).

**17.** 509 U.S. 259, 113 S.Ct. 2606, 2614–15, 125 L.Ed.2d 209 (1993).

**18.** 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997).

**19.** 475 U.S. 335, 344–45, 106 S.Ct. 1092, 89 L.Ed.2d 271.

**20.** *Id.*

**21.** *Van Deelen*, 53 F.Supp.2d at 1232 (citation omitted).

court applies "a heightened pleading standard ... requiring the complaint to contain 'specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law.' " [22] "At the Rule 12(b)(6) stage, qualified immunity protects defendants performing discretionary functions from individual liability unless, on the face of the complaint, the plaintiff alleges the violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " [23]

Plaintiff's argument that Nordeen is not entitled to qualified immunity is based on three premises: (1) that the judge ultimately found no probable cause; (2) that her version of the incident on May 6 is true and the Conelys' version is false; and (3) that Nordeen's affidavit is based on speculation, wild inferences and reckless assumptions drawn from Merrily Coburn's innocuous conduct: accidentally driving by the Conelys' house; and stopping briefly in front of the Conelys' house.

 But, the fact that after the preliminary hearing, the judge found no probable cause supporting the charge against Plaintiff, does not establish that no reasonable officer would have found indicia of probable cause supporting the complaint and warrant. Nordeen found indicia of probable cause in the statements of the Conelys and the Coburns, Merrily Coburn's admission that she had "accidentally" driven by the Conelys' house, and in the history of acrimony and/or suspicion between these two families. The judge's contrary conclusion may well have been based on additional evidence presented at the preliminary hearing, evidence that was more exculpatory of Merrily Coburn.

Moreover, Plaintiff is misguided in attacking the reasonableness of Nordeen's actions with her self serving statements in defense of her own actions. A reasonable officer need not ignore indicia of probable cause merely because the alleged violator denies the conduct. Clearly the Coburns' and the Conelys' versions of what transpired on May 6 were radically different. However, there was sufficient information to establish that there had been contact between Merrily Coburn and Mr. and Mrs. Conely, this after a no contact order prohibited the Coburns' son from contacting the Conelys' son.

Furthermore, Nordeen's affidavit sets forth sufficient facts to overcome Plaintiff's argument that her conduct could only be viewed as innocuous. Again, given the circumstances and history of these two families, driving past the Conelys' house and then stopping in front of it could be reasonably viewed as attempted intimidation.

Although Plaintiff has acknowledged that Nordeen's affidavit corrected various inaccuracies in the sheriff's report, she complains of two false statements in the affidavit. She argues that Nordeen falsely stated that she was looking for a vehicle driven by the Conelys' son, when the truth is that she never believed it was the Conelys' son who was driving the vehicle that almost struck her daughter. Rather, it was another witness that was listed in the no contact order. Of course, Plaintiff's self serving statement concerning her state of mind does not demonstrate that Nordeen's statement was reckless or falsely made. Nothing suggests that Nordeen knew that Plaintiff was looking for the truck of another witness, who the Coburns' son was prohibited from contacting. It was rea-

---

**22.** *Id.* (citation omitted).

**23.** *Id.* at 1233 (citations omitted).

 

sonable for Nordeen to conclude that Debbie Conely was looking for the Coburns' son's truck, since Conely stopped in front of the Coburns' home.

Plaintiff further argues that Nordeen falsely stated that Debbie Conely believed the Coburns were following her to discover where she lived. Plaintiff notes that the police report states that Conely said she "turned down a side street to let the Jimmy go by;" which Nordeen changed in his affidavit to "turned down a side street and observed in [sic] the GMC Jimmy vehicle drive past her." Plaintiff alleges that Nordeen changed this language to cover up the inconsistency between Debbie Conely's two statements, because if Conely in fact intentionally let the truck go by, it is not possible that Coburn followed Conely to find out where she lived. Yet, this change in the language of the affidavit does not demonstrate reckless or intentional misconduct by Nordeen. Whether Conely let the truck go by, or saw it go by, it is undisputed that Coburn managed to drive to, and allegedly stop in front of, the Conelys' home.

Plaintiff also complains of an exculpatory omission from Nordeen's affidavit, that the Conelys' son, the subject of the no contact order, was not at home at the time of the May 6 incident. This omission was neither material or exculpatory. Plaintiff was not charged with intimidating the Conelys' son; she was charged with attempting to do this. It does not matter whether the boy was at home, one can attempt to intimidate someone in ways other than direct contact with the person. As related by the Conelys', they believed the smile on Robert Coburn's face signified a non verbal statement that the Coburns now knew where the Conelys lived.

In short, none of the statements or omissions that Plaintiff perceives as action-able, establishes a violation of the Fourth Amendment, for the "warrant requirement is violated when 'a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit' if the false statement is necessary to a finding of probable cause." [24] Plaintiff's complaint does not contain specific, non-conclusory factual allegations sufficient to demonstrate a Fourth Amendment violation. And, there is nothing to support Plaintiff's allegation that Nordeen knowingly or recklessly made false statements or omissions in his affidavit.

Finally, Plaintiff argues that no one could reasonably conclude that she acted with malice or intent toward the Conelys or their son. While the facts asserted in her Complaint and in the documents attached to her Complaint and the other pleadings merely suggest that there is some history between the Coburns, Conelys and the boy allegedly driving the suspect truck, Plaintiff's response to the motion to dismiss paints a vivid picture of this history, acrimony and more. Given the statements in Nordeen's affidavit, the history between the Coburns and Conelys, the no contact order, and the unsupported diatribe of factual assertions in Plaintiff's response, the Court cannot conclude that no reasonably competent prosecutor in Nordeen's position would have made the sworn statement that there was probable cause justifying an arrest warrant.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Roger A. Nordeen's Motion to Dismiss (Doc. 7) Plaintiff's Complaint shall be GRANTED.

IT IS SO ORDERED.

---

24. *Id.* at 1234 (citations omitted).