**INTERNATIONAL MARINE CARRIERS, Plaintiff,**

v.

**The OIL SPILL LIABILITY TRUST FUND (also known as the National Oil Pollution Fund), Defendant.**

**Civil Action No. H-93-2328.**

United States District Court,
S.D. Texas,
Houston Division.

March 22, 1995.

---

**5.** *See Karimian–Kaklaki v. INS*, 997 F.2d 108 (5th Cir.1993); *Brown v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor*, 864 F.2d 120 (11th Cir.1989).

Mark Cohen, Royston Rayzor Vickery & Williams, Houston, TX, for plaintiff International Marine Carriers.

Gordon Speights Young, U.S. Attorneys Office, Houston, TX, Keith B. Letourneau, U.S. Dept. of Justice, Washington, DC, Eleanor A. Robinson–Gaither, Asst. U.S. Atty., Houston, TX, for defendant Oil Spill Liability Trust Fund.

Keith B. Letourneau, U.S. Dept. of Justice, Washington, DC, for U.S.

## MEMORANDUM AND ORDER

ROSENTHAL, District Judge.

Pending before this court is a motion for reconsideration or new trial pursuant to Rule 59(e) by plaintiff International Marine Carriers ("IMC") (Docket Entry No. 21); the United States' motion for leave to file opposition to plaintiff's Rule 59(e) motion and for costs (Docket Entry No. 22); and the United States' motion for leave to file amended opposition (Docket Entry No. 24). Based on the applicable law, the record, and the parties' submissions, this court GRANTS the United States' motion for leave to file an amended opposition (Docket Entry No. 24); DENIES as moot the United States' motion for leave to file opposition and for costs (Docket Entry No. 22); and DENIES IMC's motion for reconsideration.

### I. Background

IMC filed this suit appealing the denial of its claim for reimbursement of removal costs incurred under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701, *et seq.* IMC and the Department of the Navy entered into a contract under which IMC agreed to operate naval vessels on behalf of the United States Military Command. On April 13, 1991, IMC moored one of these vessels, the USNS SEALIFT ATLANTIC, at the Amer-

ada Hess Terminal on the Houston Ship Channel to load jet and bunker fuels. During transfer of the bunker fuel, approximately twelve barrels of bunker fuel spilled from the starboard fuel tank of the USNS SEALIFT ATLANTIC into the Houston Ship Channel. IMC, in accordance with the OPA oil spill response requirements, remediated the spilled bunker fuel, and paid cleanup costs totalling $49,048.19.

On December 26, 1991, IMC filed a claim with the Coast Guard, National Pollution Funds Center, pursuant to section 2713 of the OPA. The claim sought reimbursement of IMC's removal costs from the Oil Spill Liability Trust Fund. On March 3, 1992, the Fund denied IMC's claim on the ground that IMC could not assert a third-party defense to liability under section 2703 of the OPA. (Docket Entry No. 1, Ex. D).

IMC appealed the denial of its claim. Commander Richard Cool, on behalf of the Fund, denied IMC's appeal in an Opinion Letter dated December 16, 1992, finding that IMC failed to establish a section 2703 defense, in part because there was a contractual relationship between IMC and the Amerada Hess Terminal. (Docket Entry No. 1, Ex. F).

This suit followed the Fund's denial of IMC's appeal, which was a final agency action. IMC's complaint asserted jurisdiction under section 2717(b) of the OPA and section 10(c) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. By Order dated July 18, 1994, this court granted the United States' motion for summary judgment on the ground that the Fund's denial of IMC's appeal was not an abuse of discretion; denied IMC's motion for summary judgment; and denied the United States' motion to dismiss.

IMC subsequently filed the present motion for reconsideration or new trial under Fed. R.Civ.P. 59(e).

## II. Discussion

Rule 59(e) is designed to "correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. International Paper Co.*, 875 F.2d 468, 473 (5th Cir.1989), *quoted in Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir.1990), *cert. denied*, —— U.S. ——, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993). The task of the district court in considering a Rule 59(e) motion is to strike the proper balance between two competing interests: the need to bring litigation to an end and the need to render just decisions on the basis of all the facts. *Lavespere*, 910 F.2d at 174.

When a party seeks to upset a summary judgment on the basis of evidence that was not timely presented, the district court must balance the following factors: (1) the reasons for the failure to file the evidence in a timely fashion; (2) the importance of the evidence to the moving party's case; (3) whether the evidence was available before the summary judgment decision was made; and (4) the likelihood that the non-moving party will suffer prejudice if the motion to alter is granted. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir.1990), *cert. denied*, —— U.S. ——, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993); *see also Waltman v. International Paper Co.*, 875 F.2d 468, 473 (5th Cir.1989).

In this case, IMC offers no new evidence. Instead, IMC argues that this court's affirmation of Commander Cool's denial of IMC's appeal[1] is erroneous because the Declaration of Inspection is not a contract, but a pre-transfer check.

---

1. In denying IMC's appeal on behalf of the Fund, Commander Cool stated as follows:

   A contractual relationship ... refers to any contractual arrangement, not just direct or indirect contracts. There is a contractual relationship between an oil terminal and a vessel operator to which it is transferring oil. This contractual relationship is even stronger when the oil being transferred is to be used by the vessel for its own bunkers.... The Declaration of Inspection, signed by the Chief Engineer for the SEALIFT ATLANTIC and the dockman for [the] Terminal, further evidences a contractual relationship.
   (Docket Entry No. 1, Ex. F at 2). Because he found that there was a contractual relationship and the statutory prerequisites for a defense were not satisfied, Commander Cool denied the appeal.

OPA requires only that "any contractual relationship" exist to deny a third-party defense to liability. OPA § 1003(a)(3), 33 U.S.C. § 2703(a)(3). The issue decided by this court in its order dated July 18, 1994 was whether the Fund acted reasonably in finding that a "contractual relationship" existed between IMC and the Amerada Hess Terminal.

In support of the present motion to reconsider, IMC argues that section 156.150 of Title 33 of the Code of Federal Regulations does not characterize the Declaration of Inspection as a contract. IMC also claims that Congress intended to prevent "defendants from avoiding liability by claiming that a third party was responsible when the third party had a contractual relationship with the defendant and was acting, in essence, as an extension of the defendant." (Docket Entry No. 21 at 5) (quoting S.Rep. No. 101–94, 1990 U.S.C.C.A.N. 722, 734). IMC asserts that the terminal was not acting "in essence, as an extension" of IMC.

The arguments made by IMC are no different from those it has made previously. (*See* Docket Entry No. 12 at 16–18, Docket Entry No. 17 at 10–12). IMC presents no newly discovered evidence or new case law that would require this court to correct a manifest error of law or fact. Accordingly, this court denies IMC's motion to reconsider.

### III.  Conclusion

This court GRANTS United States' motion for leave to file an amended opposition to plaintiff's motion for reconsideration and DENIES as moot the United States' motion for leave to file opposition and for costs. This court DENIES IMC's Rule 59(e) motion for reconsideration.